J. C. GREELEY, APPELLANT, VS. NOBLE A. HULL, APPELLEE.

1. A delivery of chattels made with the intent upon the part of both the vendor and vendee that the latter shall hold under a deed about to be executed, and which is followed immediately by an execution of such deed, the vendee remaining in possession and exercising his ownership under such possession and deed, is a good delivery in law.

2. B., an insolvent debtor, desiring to make an assignment of a stock of goods, &c., for the benefit of his creditors, applied to H. to act as assignee and the latter agreed to do so. Before executing the deed of assignment they were advised that a schedule of the property should be made and attached to the deed. B. and H. then went to the store, and took, with the aid of clerks, an account of the stock, and B., while there, delivered the property to H., who received possession and opened the store and began selling through his clerks, and employed B. as a clerk. B. and H. then went immediately to the office of the lawyer who had drawn the deed, and the schedule was annexed and the deed executed by both parties. After this an attachment sued out by Greeley was levied on the goods; *Held :*

1st. That the *possession* of H. was lawful, and as much *under* and by *virtue* of the deed as if it had been given after the execution of the deed.

2d. That Hull's title as assignee is good as against the attachment, and entitled him to recover the property.

Appeal from the Circuit Court for Duval county.

*Geo. Wheaton Deans* for Appellant.

*C. P. & J. C. Cooper* for Appellee.

MR. JUSTICE RANEY delivered the opinion of the court:

Appellant obtained a writ of attachment against the property of James O. Bessent, and it was levied by the Sheriff on July 5, 1885, at 3:30 o'clock P. M., by his taking into his possession certain boots and shoes, which are described in the return as both the property and in the possession of Bessent, "at the store room, No. 61 Bay street, Jacksonville, Fla." This return, we may say, states that Bessent delivered the keys of the store. Hull instituted a claim proceeding under the statute for the recovery of the property, and relies upon a deed of assignment made to him by Bessent, who was insolvent, for the benefit of creditors, and upon possession thereunder. The deed also bears date July 5, 1885, and conveys among other things Bessent's entire stock of merchandise and the store furniture, in the above mentioned store, an inventory of which is annexed.

Upon the trial of the right of property Hull testified in substance as follows: That a day or two before the date of the assignment Bessent came to him and told him he wished to make an assignment for the benefit of his creditors, and witness consented to become his assignee; the assignment was then drawn up, it covering the stock, but the attorney advised that a schedule of the stock should be added before the assignment was executed; so on the morning of July 5, Bessent and Hull, with one Hardee and Hull's son, the last two of whom Hull had then employed to take stock, took an account of the stock, which they

completed about from one to half-past one o'clock P. M. Hull then told his son and Hardee, in ths presence of, and without any objection from Bessent, to take charge of the store for Hull, open the doors and sell what they could for him, as it was Saturday, and some trade might be caught. Hull then employed Bessent to clerk for him in selling the stock, and then left his son and Hardee in charge of the stock, and he and Bessent went to Hull's office, and executed the assignment about one o'clock P. M. Hull says he cannot remember all Bessent said to him, but the purport of it was distinctly to put him in possession as assignee before they left to sign the assignment, and he considered himself in possession, as he left his son and Mr. Hardee in charge for him. Hull, after the execution of the deed, went to dinner.

Hardee testified to the same effect as Hull as to being employed by Hull to take stock, and that Hull, when leaving to go over to his office after the account of stock was taken, told him and Hull's son to open the doors and sell what goods they could for him, as it was Saturday, and they might make sales; that he was at the store at the time the Sheriff came to make the levy; that he told Mr. Archibald, who came in with the Sheriff, that an assignment had been made, and that Mr. Hull was assignee, and witness was acting for him. It was after three o'clock when the Sheriff came to make this levy. He went at once and informed Mr. Holmes, the lawyer of Hull, that the Sheriff was there. Was hired by Hull, and was at the store in charge for him when the attachment was levied; that he does not remember telling Archibald he was acting for Bessent, and that if he did he merely meant that he was under him as Hull's chief clerk, as he had heard Hull employ him as clerk, and " we regarded him then as head clerk."

Bessent confirms the statement of Hull as proposing to make him assignee, and as to the proposition of the assignment and as to the delay of the execution till the schedule should be prepared, and the taking of stock, and the employment of Hull's son and Hardee to take stock, and of himself by Hull to clerk for him, and as to Hull's telling Hardee and his son to open the doors and commence selling. Hardee and Hull's son, he says, were in charge of the store when he and Hull went to Hull's office to sign the deed of assignment. He says he cannot give the exact language which passed between Hull and himself, but Hull "took charge, hired these clerks, and put them to selling the goods, and hired me before we left the store to go and sign the assignment," which was signed about half after one o'clock. Hull, after the signing of the deed at his office, went off, and Bessent took the deed to the Clerk's office for record, and when he returned to the store some time afterward told the Sheriff, whom he found there, that he had made an assignment, and had turned over the stock to Hull, and that Hull was in charge. Bessent then gave the key of the store up to the Sheriff under protest, he having insisted on making his levy. The papers had already been prepared before he and Hull left the store to go and sign them.　　· ·

Mr. Holmes, the attorney who prepared the assignment, testifies that Bessent brought the schedule over before two o'clock, and he added it to the assignment, and Bessent and Hull signed the assignment, and Mr. Bessent took it to carry it to the Clerk's office. After Hull returned from dinner, witness suggested to Hull that he should go to the Clerk's office and acknowledge the same for record, as accepting the trust, as the Clerk would not record it on the acknowledgment of only one of the parties. The assignment had been signed and delivered some time before Har-

dee came to tell witness of the Sheriff being at the store, and if he came at once, some time before the Sheriff's levy in this case.

The deed of assignment put in evidence is signed and sealed by both Bessent and Hull, and attested by two witnesses, and contains not only the usual operative words, granting, bargaining, and selling, transferring and setting over to Hull the property mentioned, but also the formal acceptance by Hull of the trust thereby created and reposed in him, and a covenant to honestly and faithfully execute the same.

It is contended in behalf of the appellant that it does not appear from the testimony that Hull took possession of the property *under* and *by virtue* of the assignment until *after* the writ of attachment was levied, and that therefore the verdict is contrary to the evidence.

In view of the testimony we can doubt neither that Hull was in actual possession of the property before he and Bessent signed the deed of assignment, and continued in possession until the Sheriff made the levy, nor that it was the intention of Bessent to put him in possession, nor that it was the intent of Hull to take possession. It is perfectly plain, also, that this possession was both given and taken in view of, and to be operative under the deed of assignment, and for no other purpose; and we cannot question the fact that both the execution of the deed and the delivery of the property took place before the attachment was levied. At the execution of the deed Hull was in possession of the property. No other construction can be put upon Bessent's actions than he intended to give Hull this possession. These actions are inconsistent with any other intention or purpose, even if he should have pretended that

he had any other; what he says is contrary, however, to any such pretense.

At the time of the levy of the attachment Hull had both the possession and the title of the property. It is immaterial that this possession was given to him before the execution of the deed; it was as much a possession *under* and *by virtue* of the deed as if the possession had been given immediately after the execution of the latter. "As a general rule," says Mr. Burrell, " in order to avoid all ground of objection to the validity of the assignment, possession of the personal property assigned should always, if possible, *accompany* the assignment"—§278. The delivery of the goods and the execution of the deed were parts of one transaction and accompanied each other.

The verdict, which is in favor of Hull, is so entirely consistent with the law and the testimony that it is unnecessary to discuss the charge of the judge to the jury, for even if we should admit that there is any error in it, we would still be bound to hold that it was error without injury.

The judgment is affirmed.